# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA PAGE,<br><br>              Plaintiff,<br><br>    vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>              Defendant. | CASE NO.  1:04-CV-06080-TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT |

      Plaintiff Victoria Page ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed her complaint on August 12, 2004 (Doc. 1), and her opening brief on May 25, 2005.  (Doc. 13).  The Commissioner filed her opposition to the appeal on June 27, 2005 (Doc. 15). Claimant did not file a reply brief.

      Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge.  (Docs. 5 and 8).  By an order dated June 16, 2005, this action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 14).

## **JURISDICTION**

      On October 7, 1996, Claimant first applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB"), alleging disability since 1980 due to back pain and swelling in her legs.  (Administrative Record ("AR") 15, 28).  On September 24, 1998, that

application was denied following a hearing before an Administrative Law Judge ("ALJ"). (AR 26-31). The Appeals Council denied a request for review on February 8, 2000. (AR 136-137). Claimant did not appeal.

On June 8, 2000, claimant filed a new application for SSI benefits in a joint application with her husband, who had recently become blind. (AR 151-56). As it pertains to claimant, a disability commencement date of May 22, 2000 was alleged. (AR 154, 185).[1] Claimant's application was denied initially and on reconsideration and, on August 13, 2002, ALJ Laura Speck Havens found that claimant was not disabled. (AR 15-23). The Appeals Council denied claimant's request for review on June 24, 2004 (AR 6-9), leaving the ALJ's decision of August 13, 2002, as the final decision of the Commissioner. On August 12, 2004, within sixty days of the Appeals Council decision, claimant timely appealed to the district court pursuant to 42 U.S.C. § 405(g). (Doc. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was born on September 5, 1953, making her 48 years old at the time of ALJ Havens's decision. (AR 15-23, 154). Claimant testified that she had a GED but no other college or vocational training. (AR 391). The ALJ found that claimant had "no vocationally relevant past work experience" (AR16) and claimant testified that she was a housewife whose source of support was her husband. (AR 392).

Claimant's SSI application and medical history evidence multiple physical and mental complaints. First, and as to claimant's non-physical issues, the ALJ found that the medical evidence indicated "borderline intellectual functioning, and substance abuse, in remission." (AR 17).

Second, and as to claimant's physical complaints, the larger grouping of such complaints involved pain she experienced in her lower back, knees and swollen legs. As the ALJ found, "the medical evidence indicates that the claimant has chronic lower back pain [and] degenerative arthritis

---

[1] The ALJ, in her decision, identified an alleged disability onset date of August 11, 1999 (AR 16), and she had earlier requested vocational testimony covering the period "August 11, 1999 through the present." (AR 138). However, August 11, 1999 was the date that claimant's husband became blind. (AR 151).

in her left knee." (AR 17). Likewise, the ALJ noted that claimant had complained of swelling (edema) in her legs and feet. (AR 17). At the administrative hearing, claimant testified that she attempted to relieve this swelling by elevating her legs "[p]robably six, seven times a day." (AR 402).

Third - in addition to claimant's back, leg and joint-related complaints - both her medical history and her testimony at the administrative hearing evidence that claimant had ongoing urinary incontinence. (AR 236, 238, 323, 333-34, 396, 401-02). At the administrative hearing, and in a delayed response to the ALJ's inquiry about her sleep patterns, claimant testified that "You asked me how I sleep, I have to get up so much. I can't control my urine." (AR 396). At the same hearing, claimant testified that she had to wear bladder pads, which she changed at least three times a day. (AR 401). Claimant also testified that she felt the need to urinate, and would attempt to do so, "probably ten, fifteen [times a day], I go a lot." (AR 401).

After claimant testified, the ALJ presented a hypothetical to vocational expert ("VE") Susan Creighton-Clavel. The hypothetical referenced claimant's mental status and her back/joint related pains, but not her urinary incontinence:

> "[A]ssume a person the claimant's age which is 48 with a . . . high school equivalent education and no past relevant work with the following additional restrictions present. That the hypothetical person can sit six hours out of an eight hour day. Can stand two hours out of an eight hour day and can walk two hours out of an eight hour day, but requires a sit stand option when performing a job. The hypothetical person can occasionally lift and carry 20 pounds, frequently lift and carry ten pounds. The hypothetical person has postural limits of the following. Can do no climbing, can do no crouching and no crawling. Can do only occasional balance, stooping, kneeling. All right additionally, the hypothetical person has mental restrictions to the following . . . . A fair ability to relate to coworkers, a fair ability to deal with the public, a fair ability to maintain attention and concentration. A fair ability to deal with work stress. And is able to understand remember and carry out simple job instructions only. And fair is defined as limited but satisfactory. All right, with these restrictions present, are there jobs in the state or national economy for such person?" (AR 403-04).

Given the foregoing hypothetical, Ms. Creighton-Clavel testified that claimant could perform three jobs listed in the Directory of Occupational Titles ("DOT"): office helper, 239.567-010, storage facility clerk, 295.367-026 and cashier II, 211.462-038 [sic][2]. (AR 404-05).

---

[2] In the DOT, the code "211.462-038" references a "Toll Collector." The correct DOT code for "Cashier II" is 211-462.010.

3

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See, Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is

substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## ALJ'S FINDINGS

Preliminarily, ALJ Havens noted that claimant had pursued a prior disability claim that had been denied by a prior ALJ. (AR 15-16). ALJ Havens stated that the prior findings were "entitled to some res judicata consideration" and that "res judicata requires the Administrative Law Judge to adopt the findings from the prior decision unless there is new and material evidence relating to the findings." (AR 16). Notwithstanding this statement, ALJ Havens proceeded to review "all of the evidence of record" (AR 16) and to set forth her own, independent findings.[3]

**Step One**

The ALJ found at step one that claimant "has not engaged in substantial gainful activity since the alleged onset of disability." (AR 22).

**Step Two**

At step two, the ALJ determined that claimant "has an impairment or a combination of impairments considered 'severe' based on the requirements in the Regulations 20 CFR § 416.920(b)." (AR 22).

**Step Three**

The ALJ next considered whether claimant's impairments, while severe, fit with the

---

[3] While the ALJ correctly noted that res judicata applies to administrative proceedings, see Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), that application was waived when the ALJ undertook to review "all of the evidence of record" and to make new findings on the merits without ever addressing - in any of her findings - whether "changed circumstances" existed. Byam v. Barnhart, 336 F.3d 172, 180 (2nd Cir. 2003)(waiver when Secretary reviews entire record and renders decision on the merits). See Chavez, 844 F.2d at 693 (noting applicability of "changed circumstances" test when claimant seeks to overcome presumption of continuing nondisability arising from prior denial). Res judicata also was waived when the Secretary failed to assert it as a defense in her Opposition to Plaintiff's Opening Brief. See Hernandez v. Heckler, 621 F. Supp. 439, 442 n. 2 (N.D. Cal. 1985)(the defense of res judicata was waived when the Secretary failed to raise it in an answer to the complaint or in her motion for summary judgment).

impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  Upon making the comparison, the ALJ concluded that the claimant's impairments "do not meet or medically equal one of the listed impairments."  (AR 22).

**Step Four**

The ALJ found that claimant had no relevant past work (AR 22) and did not, therefore, consider whether claimant's impairment would have prevented her from performing work she had performed in the past.

**Step Five**

The bulk of the ALJ's decision was addressed to step five, namely, whether claimant was able to perform other work in the national economy in view of her age, education and work experience.  (AR 17-22).  The analysis undertaken by the ALJ addressed claimant's mental and back/joint/leg related complaints, but did not mention complainant's urinary incontinence.

As to claimant's alleged back/joint/leg related impairments, the ALJ rejected the opinions of *both* claimant and her treating physician.  As to claimant, the ALJ rejected her assertions as "not wholly credible."  (AR 18).  The reasons given were two-fold: (1) discrepancies between claimant's assertions and the reports of examining and non-examining physicians and (2) a failure by claimant to receive treatment at a level and frequency consistent with her level of complaints.  (AR 18).  As to claimant's treating physician, David S. Kerwin, M.D., the ALJ decided to "accord[] little weight to Dr. Kerwin's opinion" as set forth in Dr. Kerwin's report dated February 28, 2002.  (AR 374-78).  The entirety of the reason given was that the report "is without substantial support from the other evidence of record, which obviously renders is less persuasive."  (AR 19).  There was an earlier and more comprehensive report submitted by Dr. Kerwin dated July 5, 2001, which attached the results of numerous treating visits by claimant on August 3 and 21, 2000, September 21, 25 and 28, 2000, October 3 and 20, 2000, November 7, 2000, December 7, 2000, and January 9 and 25, 2001, as well as a reports of various other tests that had been run on still other dates.  (See AR 221-49).  Among other things, this report included a functional capacity assessment that claimant could lift up to 10 pounds occasionally and could sit/stand/walk a total of 2 hours per work day.  (AR 222-23).

Although Dr. Kerwin's July 5, 2001 report and its attachments were actually used by the ALJ in her synopsis of claimant's medical history (AR 18), the ALJ otherwise made no reference to it - neither adopting nor rejecting its findings.

The ALJ did accord "substantial weight" to the September 7, 2000 report and findings of a consulting examination performed by Daniel R. Katzenberg, M.D. (AR 18, 323-24). Dr. Katzenberg's report included a functional capacity recommendation that claimant "should be limited to carrying 15 to 20 pounds occasionally or 5 to 10 pounds frequently," and "should be limited on her feet to 5 to 10 minutes at a time or 1 to 2 hours out of an 8 hour work day." (AR 324). The ALJ also accorded "substantial weight" to the March 19, 2001 findings of state agency physician Norman Wheeler, M.D., who prepared a residual functional capacity report in March 2001. (AR 19, 253-60). In his report, Dr. Wheeler specified in a checklist that claimant could occasionally lift and or carry up to 20 pounds, frequently lift and or carry up to 10 pounds, could stand up to 2 hours in a work day, and could sit up to 6 hours in a work day. (AR 254-60). Finally, the ALJ accorded substantial weight to a psychological consultative examination by Dr. Gregory Fields on October 25, 2000, which concluded that claimant is mildly limited in her ability to relate to others in an appropriate manner, and to maintain appropriate levels of concentration, pace, and persistence required to perform one or two-step simple and repetitive tasks. Dr. Fields also concluded that claimant's ability to understand and follow simple and straightforward instructions is unimpaired. (AR 19, 317-21).

Given the reports relied upon, the ALJ concluded that claimant could perform a wide range of light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." (AR 21-22). The ALJ noted that, absent other limitations, a finding of "not disabled" would be directed by the Medical-Vocational Guidelines (AR 21), and that "claimant's ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations" requiring a vocational expert's opinion as to whether there were a significant number of jobs in the national economy that claimant could perform given her residual functional capacity. (AR 21). The ALJ was silent as to the nature of the "additional exertional and/or non-exertional limitations." However, given the hypothetical

posed to the vocational expert at hearing, it appears that the only additional limitations considered by the ALJ were those pertaining to claimant's degree of intellectual functioning.  (See AR 403-04).

Finally, based upon the vocational expert's response to the posed hypothetical - which was that claimant could work as an office helper, storage facility clerk, or cashier - the ALJ concluded that claimant was "capable of making a successful adjustment to work that exists in significant numbers in the national economy."  (AR 21).  According, the ALJ found that claimant was "not disabled."  (Id.).

## ISSUES

Claimant's Opening Brief raised the following issues for consideration:

A.  Whether the ALJ erred by rejecting the opinion of claimant's treating medical professional in favor of consultative examinations by non-treating physicians.

B.  Whether the ALJ erred in developing or analyzing claimant's testimony at the administrative hearing and in rejecting claimant's subjective complaints.

C.  Whether the ALJ erred in specifying the impairments contained in the hypothetical posed to the vocational expert.

D.  Whether the ALJ's conclusions at steps two and five of the sequential evaluation process were supported by substantial evidence.

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.  Medical Professional Opinions**

Claimant argues that the ALJ failed to show the appropriate degree of deference to the opinions of claimant's treating physician, Dr. Kerwin.  (Doc. 13, pp. 3-4).

The courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity

with the claimant and her physical condition. <u>Fair v. Bowen</u>, 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. <u>Lester</u>, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted); <u>see</u>, <u>also</u> 20 C.F.R. § 404.1527. In order to reject a treating physician's ultimate conclusions, the ALJ must supply "clear and convincing" reasons. <u>Fair</u>, 885 F.2d at 604-605. Where a treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion only if she provides "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." <u>Id</u>. (quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)). Historically, the courts of the Ninth Circuit have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports that are based substantially on the claimant's subjective complaints of pain as specific legitimate reasons for disregarding a treating or examining physician's opinion. <u>Flaten v. Secretary of Health & Human Svcs.</u>, 44 F.3d at 1453, 1463-64; <u>Fair</u>, 885 F.2d at 604.

Here, the issue is the ALJ's rejection of Dr. Kerwin's opinion that claimant could not work an 8 hour work day and could only occasionally lift or carry objects up to 10 pounds. In his report dated February 28, 2002, Dr. Kerwin opined that claimant's response to treatment and prognosis were fair, and that claimant could sit/stand/walk for 2 hours in an 8 hour work day, but only for 15 minutes at a time, and could occasionally lift/carry up to 10 pounds. (AR 374-78). The ALJ's basis for discounting Dr. Kerwin's opinion was - in its entirety - as follows:

> "The undersigned accords little weight to Dr. Kerwin's opinion as it is without support from the other evidence of record, which obviously renders it less persuasive." (AR 19).

There are several problems with the ALJ's conclusion. First, and fundamentally, it contains no specific, legitimate bases for rejection, only a vague statement that the treating physician's opinions are "without substantial support" from unspecified "other evidence of record." "'[E]ven if contradicted by another doctor,' the testimony of a treating physician 'can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record [,]' [and the]

reasons given must be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight.'" Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (*quoting* Lester, 81 F.3d at 829 and SSR 96-2p). In this case, the reasons given for rejecting Dr. Kerwin's assessment are not sufficiently specific to allow the Court to determine precisely why Dr. Kerwin's assessment is unfounded.

It appears that the "other evidence of record" referenced by the ALJ were the results of one consultative neurological examination performed by Dr. Katzenberg and reported in September 2000 (AR 323-24) and one non-examining residual functional capacity report by Dr. Wheeler reported in March 2001 (AR 253-60). Both state, in somewhat of a checklist format (as also completed by Dr. Kerwin), that claimant is able to work an 8 hour work day and to lift up to 20 pounds.

Dr. Katzenberg's September 7, 2000 report recommends that claimant

"[S]hould be limited on her feet to 5 to 10 minutes at a time or 1 to 2 hours out of an 8 hour work day. Carrying should be limited to 15 to 20 pounds frequently. She should not climb, balance, crouch, stoop or crawl, and she should not walk on uneven surfaces. Her ability to do sedentary work is not impaired." (AR 324).

Dr. Wheeler's non-examining functional capacity assessment dated March 18, 2001 reports that claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of at least 2 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday. (AR 254). Dr. Wheeler further reports that claimant is limited to standing 5-10 minutes at a time or 1-2 hours out of an 8 hour workday. (AR 253-60). Dr. Wheeler ultimately concludes that claimant "would have difficulties remaining on his feet for extended periods but could perform sedentary work activity."[4] (AR 260).[5]

It is unclear - because no specific reason is stated in the ALJ's decision - why a single-visit consultative impression and a non-examining functional capacity assessment take precedence over Dr. Kerwin's impressions formed over a year of treatment. Murray v. Heckler, 722 F.2d 499, 501

---

[4] The Court notes that this portion of Dr. Wheeler's report uses a masculine adjective. Claimant is a female.

[5] The ALJ did not reference or rely upon a residual functional capacity assessment completed by George A. Jansen, Sr., M.D., a non-examining medical consultant, on September 26, 2000. (AR 261-68). This checklist report stated that claimant could lift 10 pounds frequently and 20 pounds occasionally, and that she could stand/walk 2 hours a day and sit 6 hours a day. (AR 262).

(noting "sharp contrast" between the individualized medical opinions of a long-standing treating physician versus "check marks in boxes [by a non-treating physician] on a form supplied by the Secretary").

When weighing a controverted medical opinion, the ALJ should have considered, inter alia, the length of the examining relationship, the length of a treatment relationship, and the consistency of the treating physician's diagnosis. 20 C.F.R. § 416.927(d); see Edlund, 253 F.3d at 1152-53 & n.6. That did not occur here. If such matters had been considered here, there would have been a reference to Dr. Kerwin's substantial history of regular medical treatment of claimant during her alleged period of disability, as well as the consistency of his opinion.

Dr. Kerwin's opinion, and his treating history of claimant, was set forth in Dr. Kerwin's first report - a report neither rejected nor adopted by the ALJ - which was received into the administrative record on July 9, 2001. (AR 220-49). As he noted in that report, Dr. Kerwin had been treating claimant from August 3, 2000 through June 24, 2001 (i.e., through the date that he submitted his report). (AR 221). Attached to the medical assessment form he submitted (a form which listed claimant's 10 pound weight lifting limitation), are reports and notes of office visits by claimant on August 3 and 21, 2000, September 21, 25 and 28, 2000, October 3 and 20, 2000, November 7, 2000, December 7, 2000, and January 9 and 25, 2001, as well as a reports of various other tests that had been run on still other dates. (See AR 220-249). These reports reference a range of medications prescribed to claimant and/or taken by claimant, including Vioxx, Prednisone, Tylenol 3 and various other drugs. (See AR 221, 227-35, 238-39). Among the lab tests caused to be run by Dr. Kerwin were some that were negative (e.g., a venous doppler ultrasound run on October 2, 2000, necessitated by a history of "bilateral leg swelling," which returned negative results for deep venous thrombosis)(AR 246) and some that were positive (e.g., x-rays taken on December 14, 2000, which returned a positive impression of "osteoarthritis" and a "distal right femur with deformity" on claimant's knee) (AR 240).

Based on the foregoing, the undersigned concludes that the ALJ failed to provide sufficient reasons for rejecting the consistent opinions of the treating physician. When the Commissioner fails to provide adequate reasons for rejecting the opinions of a treating or examining physician, that

physician's opinions are credited as a matter of law. Lester, 81 F.3d at 834. Accordingly, the opinions of Dr. Kerwin are credited. As a result of erroneously rejecting the opinions of claimant's treating physician, the ALJ's conclusion at the step three of the sequential evaluation process may not be supported by substantial evidence in this case.

The Court has the discretion to remand the case for additional evidence and finding or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. Id. Remand for the payment of benefits is required where "(1) the ALJ . . . failed to provide legally sufficient reasons for rejecting [the] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the evidence that the ALJ would be required to find the claimant disabled were such evidence credited." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

In this case, the ALJ failed to give specific and legitimate reasons for rejecting the consistent opinions of Dr. Kerwin. Accordingly, the issue of whether claimant's disability is so severe as to preclude substantial gainful activity, step three, needs to be reconsidered while taking into consideration the credited opinions of Dr. Kerwin.

**B. Claimant's Subjective Opinions and Testimony**

Claimant objects to the ALJ's rejection of the credibility of her subjective complaints and of her testimony. (Doc. 13 at pp 6-7).

The ALJ did in fact deem claimant's subjective complaints "not wholly credible." (AR 18). Two reasons for this determination were specified: (1) discrepancies between claimant's assertions and the reports of examining physicians and (2) the "level and frequency" of claimant's treatment was deemed inconsistent with the level of her complaints. (AR 18). Given that the opinions of claimant's treating physician, Dr. Kerwin, are to be credited as a matter of law, as set forth in the analysis above, the first rationale adopted by the ALJ is no longer tenable.

The second rationale given by the ALJ for rejecting claimant's credibility was, basically, that she did not treat often enough. However, the first report submitted by Dr. Kerwin - a report neither rejected nor adopted by the ALJ - included as attachments records of monthly, and sometimes twice-

monthly office visits, in addition to a series of tests performed to determined the root of claimant's problems. (AR 220-49). This is entirely consistent with the Claimant's Statement dated February 20, 2000, in which claimant wrote that she saw Dr. Kerwin "monthly, sometimes more." (AR 157).[6] In sum, it is clear that claimant has a long history of seeking treatment. As such, the "failure to treat," to the extent asserted by the ALJ as an additional reason to discount the credibility of claimant's subjective complaints, is also unfounded.

The ALJ made no reference in her opinion - or in her hypothetical posed to the vocational expert - to claimant's urinary incontinence, as identified by claimant during her hearing (AR 396, 401) and during various doctor visits. (AR 236, 238, 333, 334). The problem was also identified by Dr. Katzenberg in his consultative examination on September 7, 2000. (AR 323). There was no controverting evidence.

Urinary incontinence is a nonexertional impairment. Mac v. Sullivan, 811 F. Supp. 194, 199 (E.D. Pa. 1993); see Nichols v. Califano, 556 F.2d 931, 931 (9th Cir. 1977)(all parties in case conceded that urinary incontinence, as presented in that case, rendered claimant unable to engage in gainful employment).

In this case, the ALJ failed to give specific and legitimate reasons for rejecting the subjective complaints of claimant, in particular her complaints of urinary incontinence as corroborated by her medical records. The issue of whether - given her urinary incontinence - claimant is capable of performing work in the national economy remains unresolved. Therefore, should the ALJ determine on remand that vocational testimony is required, albeit after first crediting the opinions of Dr. Kerwin in reassessing her step three analysis and after next hearing whatever additional medical evidence is required on the issue of urinary incontinence, then the hypothetical posed to the vocational expert should include this nonexertional limitation. See Mac, 811 F. Supp. at 199-200 ("the ALJ must call a vocational expert to determine if plaintiff is able to perform substantial gainful

---

[6] When claimant first filed for disability, she stated that she did not have the money to go to a doctor. (AR 81-82). The ALJ assigned to this first filing noted claimant's failure to treat, as well as claimant's allegation of lack of money, and stated that claimant had not shown that she applied for and was denied financial assistance for health care. (AR 30). It is unknown what transpired in the interim in terms of claimant's access to health care benefits, but it is evident that claimant did treat regularly with Dr. Kerwin in 2000 and 2001.

activity, given her exertional and nonexertional [urinary incontinence] impairments").

## C. Hypothetical Posed to Vocational Expert

As noted above, the hypothetical posed to the vocational expert at claimant's hearing failed to include her urinary incontinence as a nonexertional impairment. Should the ALJ determine, on remand, and after crediting the opinions of Dr. Kerwin, that the testimony of a vocational expert is required, then the hypothetical should include those nonexertional impairments found to exist by the ALJ after taking whatever additional medical evidence is required on the issue.

## D. Substantial Evidence to Support Steps 2 and 5 of the Sequential Analysis

Claimant argues that the ALJ's step two and step five determinations in this case lacked substantial evidence. (Doc. 13, pp. 2-3). As noted above, the ALJ, on remand, is to credit the opinions of claimant's treating physician, Dr. Kerwin, which may bear upon the outcome of the sequential analysis. The ALJ shall also consider the testimony of claimant herself - and any additional medical evidence that may be required on the issue - as it pertains to claimant's urinary incontinence, all of which may bear upon step five of the sequential analysis.

## CONCLUSION

Claimant argues that the ALJ's errors should result in this Court reversing the ALJ's decision and awarding benefits. The Court has the discretion to remand the case for additional evidence and finding or to award benefits. Smolen, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. Id. Remand is appropriate when additional administrative proceedings could remedy defects. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). In this case, further development is necessary for a proper determination to be made.

A redetermination of whether the Medical-Vocational Guidelines are dispositive should be performed on remand which takes into consideration the credited opinions of Dr. Kerwin. In addition, and if required, claimant's nonexertional impairment of urinary incontinence shall - consistent with whatever additional medical evidence is submitted on the issue - be presented to a vocational expert, at a new hearing, in order to determine if claimant is capable of performing any jobs available in the national economy, despite her physical and mental impairments and limitations.

Finally, the ALJ shall also take into consideration any other evidence or testimony relevant to claimant's disability claim.

For the reasons outlined above, the undersigned concludes that the Commissioner's decision to deny claimant disability benefits was not supported by substantial evidence in the record and was not based upon the proper legal standards.

Accordingly, it IS ORDERED that

1. Claimant's social security complaint IS GRANTED;

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for development of the record and further consideration, consistent with this decision, of claimant's status as disabled, including whether claimant's impairments are so severe as to preclude substantial gainful activity, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1; and whether on the basis of claimant's age, education, work experience, and residual functional capacity, claimant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f); and

3. Judgment BE ENTERED for claimant Victoria Page and against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

Dated:     **January 5, 2006**                               **/s/ Theresa A. Goldner**
**j6eb3d**                                                              UNITED STATES MAGISTRATE JUDGE